**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-24259-CIV-ALTONAGA/Reid**

**AMERISTAR AIR CARGO, INC.,**

      Plaintiff,

v.

**TRIAD AERO SALES, CORP.,**

      Defendant.

_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendant, Triad Aero Sales, Corp.'s Renewed Motion for Judgment as a Matter of Law ("Rule 50(b) Motion") [ECF No. 140]; and Motion for New Trial and, in the Alternative, Motion for Remittitur ("Rule 59 Motion") [ECF No. 142], both filed on June 25, 2025.  Plaintiff, Ameristar Air Cargo, Inc. filed [Amended] Responses in Opposition ("Responses") [ECF Nos. 158 and 157, respectively]; and Defendant filed Replies [ECF Nos. 153 and 159, respectively].  The Court has considered the parties' written submissions, the record, and applicable law.  For the following reasons, the Motions are denied.

**I.  BACKGROUND**

This dispute stems from a failed aircraft-parts transaction between Plaintiff, a Texas-based airline operating McDonnell Douglas DC-9 freighters, and Defendant, a Florida aircraft-parts dealer.  (*See* Am. Compl. [ECF No. 6] ¶¶ 1, 8–9).  On July 15, 2022, Plaintiff placed a $150,000 purchase order with Defendant for three overhauled landing-gear assemblies.  (*See* Rule 50(b) Mot. 10; *see also* Am. Joint Ex. List [ECF No. 132], Ex. 8, Purchase Order [ECF No. 132-8] 2).[1]

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

Under the agreement, Defendant was to have the assemblies processed by a third party, FAA-certified repair station, and delivered to Plaintiff by early November 2022.  (*See* Rule 50(b) Mot. 15–16; *see also* Def.'s Ex. List [ECF No. 134], Ex. 25, Emails [ECF No. 134-8] 13 (email from Defendant confirming the gear would be ready the first week of November)).

The delivery never came.  On May 3, 2023, Defendant canceled the contract and kept Plaintiff's $75,000 deposit.  (*See* Rule 50(b) Resp. ¶ 17).  Plaintiff then turned to ATI Aviation Services ("ATI"), agreeing to pay at least $207,500 to overhaul a spare set of DC-9 landing gear to replace the units Defendant had neither delivered nor returned.  (*See id.* ¶ 20; *see also* Pl.'s Ex. List [ECF No. 133], Ex. 5, ATI Invoices [ECF No. 133-5] 2).  As Plaintiff's Vice President Stacy Muth and Director of Maintenance Ryan Cole testified, Plaintiff no longer trusted Defendant to perform the work after being misled about the gear's status.  (*See* Rule 50(b) Resp. ¶ 23).

To avoid grounding the two affected aircraft, N784TW, and N785TW, Plaintiff secured "escalations" — calendar-time extensions from the Federal Aviation Administration for installing the landing gear.  (*See id.*; *see also generally* Joint Ex. List, Exs. 10–11, Escalations [ECF Nos. 132–10–11]).  These extensions allowed N784TW to remain in continuous service and kept N785TW operational until its escalation expired on November 1, 2024.  (*See* Rule 50(b) Resp. ¶ 24).  ATI completed the overhaul in February 2025, and N785TW returned to service on February 18, 2025.  (*See id.*).

To establish its lost profits at trial, Plaintiff presented testimony from Muth, who explained that N785TW would have earned profit margins comparable to the rest of Plaintiff's DC-9-15 fleet had it remained in service during the downtime.  (*See id.* ¶ 21).  Her calculations drew on verifiable performance data from the other aircraft between November 1, 2024, and February 17, 2025.  (*See id.*).  Muth determined the average net profit per aircraft by subtracting fuel, fees, and federal

excise taxes ("FETs") from aggregate trip revenue for all DC-9-15 aircraft between November 1, 2024, and February 17, 2025, and then dividing the result by the number of DC-9-15 aircraft in the fleet.  (*See id.*).  Muth's calculations produced a per-aircraft profit of $1,019,104.40 for the relevant period.  (*See id.*; *see also* Pl.'s Ex. List, Ex. 24, Loss of Use [ECF Nos. 133–22] 2–3).

During the four-day jury trial, at the close of Plaintiff's case-in-chief, Defendant moved under Federal Rule of Civil Procedure 50(a) for judgment as a matter of law on its affirmative defenses of failure to mitigate and avoidable consequences; the Court denied the motion.  (*See* Rule 50(b) Resp., Ex. A, May 23, 2025 Trial Tr. [ECF No. 158-1] 119:5–120:10).  The jury found for Plaintiff on both its breach-of-contract and fraudulent misrepresentation claims.  (*See* Rule 50(b) Mot. 6; Verdict Form [ECF No. 128] 2–3).  On the contract claim, it awarded $258,064.35 in compensatory damages and $1,000,000 in lost profits.  (*See* Verdict Form 2–3).  On the fraud claim, it awarded $75,000 in compensatory damages, plus interest, but no lost profits.  (*See id.* 3). The jury declined to award punitive damages.  (*See* Suppl. Verdict Form [ECF No. 129] 1).

Defendant now renews its motion for judgment as a matter of law under Rule 50(b) and seeks, in the alternative, a new trial or remittitur under Rule 59.  (*See generally* Mots.).

## II.  LEGAL STANDARDS

***Judgment as a Matter of Law.***  Federal Rule of Civil Procedure 50(b) governs renewed motions for judgment as a matter of law.  Under Rule 50, a party may move for judgment as a matter of law at the close of evidence, and if the motion is properly renewed, after the jury has returned its verdict.  *See* Fed. R. Civ. P. 50(a)–(b).  The standard is exacting: the motion may be granted only if "there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party."  *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007) (citation and quotation marks omitted).  A court must assess whether the evidence presents "a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1425 (11th Cir. 1998) (citation and quotation marks omitted). All evidence, and reasonable inferences drawn from it, must be viewed in the light most favorable to the nonmoving party. *See id.* (citation omitted).

If the jury returned a verdict, Rule 50(b) authorizes the Court to (1) enter judgment on the verdict, (2) order a new trial, or (3) enter judgment as a matter of law. *See* Fed. R. Civ. P. 50(b). A Rule 50(b) motion may also "include an alternative or joint request for a new trial under Rule 59." *Id.*

***New Trial.*** Federal Rule of Civil Procedure 59(a)(1) permits the Court, on a party's motion, to "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1) (alterations added). A new trial may be warranted where the verdict runs counter to the great weight of the evidence, *see Rosenfield v. Wellington Leisure Prods., Inc.*, 827 F.2d 1493, 1497–98 (11th Cir. 1987) (citation omitted); where the trial was marred by evidentiary error, *see Peat, Inc. v. Vanguard Rsch., Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004); or where the jury instructions were legally flawed, *see Stuckey v. N. Propane Gas Co.*, 874 F.2d 1563, 1571 (11th Cir. 1989) (citation omitted). Misconduct by counsel may also justify a new trial, *see McWhorter v. City of Birmingham*, 906 F.2d 674, 676–78 (11th Cir. 1990), as may a combination of these or other trial defects, *see Deas v. PACCAR, Inc.*, 775 F.2d 1498, 1504–05 (11th Cir. 1985).

Still, such relief is not to be granted lightly. A court should set aside a verdict only when convinced the jury "has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir. 1988) (citations omitted).

***Remittitur.*** In lieu of a full retrial, a court may also opt to reduce an excessive damages

award through remittitur.  *See Bozeman v. Pollock*, No. 14-60493-Civ, 2015 WL 5016510, at *10 (S.D. Fla. Aug. 25, 2015) (citation omitted).  That remedy is appropriate when "the jury's award is unreasonable on the facts."  *Id.* (citation and quotation marks omitted).  And if the award is not just unreasonable but unconstitutionally excessive, the court has an affirmative duty to bring it into compliance with due process.  *See id.* (citation omitted).  Even so, any reduction of the jury's award must come with the plaintiff's consent.  *See Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1329 (11th Cir. 1999) ("[N]o judgment for a remittitur may be entered without the plaintiff's consent because the Seventh Amendment prohibits the court from substituting its judgment for that of the jury's regarding any issue of fact." (alteration added; citations omitted)).

## III.  DISCUSSION

### A.  <u>Rule 50(b)</u>

To begin, it is well settled "that any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) at the close of the evidence and prior to the case being submitted to the jury."  *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004) (citations omitted).  Consequently, "a party cannot assert grounds in the renewed motion that it did not raise in the earlier motion."  *Id.* (citation and quotation marks omitted).

At the close of Plaintiff's case-in-chief, Defendant moved under Rule 50(a) on two grounds: (1) that Plaintiff failed to mitigate damages by rejecting Defendant's offer to return the $75,000 deposit and instead paying more than $150,000 to overhaul the landing gear with third-party vendor ATI; and (2) Plaintiff's claimed lost profits were not proximately caused by Defendant's conduct, but by Plaintiff's failure to timely repair a third, unrelated aircraft.  (*See* Rule

50(b) Resp., Ex. A, May 23, 2025 Trial Tr. 119:5–120:10).   Those are the sole preserved arguments, and Defendant's Rule 50(b) Motion substantively develops only the second.[2]

Defendant now attacks the $1 million lost-profits award as both unsupported and unforeseeable, arguing Plaintiff failed to connect the grounding of N785TW to Defendant's breach or to prove lost profits with reasonable certainty.  (*See* Rule 50(b) Mot. 16–25; *see also* Rule 50(b) Reply ¶¶ 9–10, 14).   Defendant contends that ATI's delays, not its own conduct, caused the grounding; that the 16-month gap between the alleged breach and the grounding rendered damages speculative and unforeseeable; and that Muth's calculations improperly included revenue earned by non-party Ameristar Jet Charter, Inc. (*See* Rule 50(b) Mot. 16–25; *see also* Rule 50(b) Reply ¶¶ 15–17).  Plaintiff insists the trial evidence — including Muth's calculations based on actual net-profit data, the $75,000 deposit Defendant never returned, and the additional "cost of cover" paid to ATI — supported a reasonable jury finding on both causation and damages.  (Rule 50(b) Resp. ¶ 25; *see id.* ¶¶ 13–21).  As for the inclusion of Ameristar Jet Charter revenue, Plaintiff emphasizes that Muth testified Plaintiff earned that revenue and Defendant never cross-examined her about the billing relationship between the two entities.  (*See id.* ¶ 22 n.16).

Under Florida law, to recover damages for lost profits in a breach-of-contract action, a party must "prove a breach of contract, that the party actually sustained a loss as a proximate result of that breach, that the loss was or should have been within the reasonable contemplation of the parties, and that . . . the damages were reasonably certain."  *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1242 (11th Cir. 2009) (alteration added; citation and emphasis omitted).  Applying

---

[2] To the extent Defendant's Rule 50(b) Motion introduces new theories — for example, objections based on evidentiary inadmissibility or untimely disclosure under Rule 26 (*see, e.g.*, Mot. 7–8, 13, 23) — those arguments were not raised in its Rule 50(a) motion and are therefore waived.  *See Doe*, 394 F.3d at 903 (citations omitted); *see also WL All. LLC v. Precision Testing Grp. Inc.*, No. 22-10780, 2022 WL 17830257, at *3 (11th Cir. Dec. 21, 2022) (argument based on a new theory deemed waived).

that standard, the verdict stands: viewed in Plaintiff's favor, the evidence could readily support findings of breach, proximate cause, foreseeability, and damages with reasonable certainty.

For example, on breach and proximate cause, the evidence shows that Defendant's May 2023 breach directly resulted in N785TW's grounding, which continued until ATI completed work in February 2025.  (*See* Rule 50(b) Resp. ¶¶ 17, 20–21, 23–24).  The 16-month interval between the breach and the grounding (*see* Rule 50(b) Mot. 16) was the product of Plaintiff's mitigation efforts, including engaging ATI the month after the breach as cover and obtaining FAA extensions that kept the aircraft in service and minimized losses (*see* Rule 50(b) Resp. ¶ 23).

The evidence likewise supports findings of foreseeability and non-remoteness.  The parties discussed a November 2022 deadline for the overhauled gear, and Defendant's failure to meet that deadline predictably resulted in the grounding of Plaintiff's aircraft and lost revenue once FAA extensions expired.  (*See* Rule 50(b) Resp. ¶¶ 23–24; *see also* Rule 50(b) Mot. 16).  Plaintiff proved the amount with reasonable certainty: Muth walked the jury through a line-by-line calculation: using actual DC-9-15 fleet invoices from the outage period of November 1, 2024, to February 17, 2025; subtracting fuel, fees, and FETs to derive net profit; and averaging the result per aircraft, which yielded $1,019,104.40.  (*See* Rule 50(b) Resp. ¶¶ 20–21).  The jury was also entitled to credit her testimony that Plaintiff — not its affiliate — suffered the loss, along with evidence of the retained $75,000 deposit and the additional ATI "cost of cover."  (*See id.* ¶¶ 19–21).

Ultimately, Defendant may quarrel with the weight of the evidence, but it cannot override the jury's assessment of the facts.  *Cf. Pleasant Valley Biofuels, LLC v. Sanchez-Medina*, No. 13-23046-Civ, 2014 WL 2855062, at *7 (S.D. Fla. June 23, 2014) ("Once causation is proved . . . lost profit damages are recoverable if there is *some standard* by which the amount of damages may be adequately determined." (alteration and emphasis added; citation and quotation marks omitted)).

**B.  Rule 59**

Defendant next seeks a new trial under Rule 59, contending the verdicts were (1) against the clear weight of the evidence; (2) inconsistent, arbitrary, and illogical; (3) contrary to the Court's instructions; and (4) the product of Plaintiff's failure to mitigate damages.  (*See* Rule 59 Mot. 11–15).  In the alternative, Defendant requests remittitur, arguing that the compensatory damages award is unrecoverable under Florida law.  (*See id.* 14–16).

Again, a party may seek a new trial by showing "the verdict is against the great weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940).  Rule 59 is not a vehicle to "relitigate old matters, raise argument[,] or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005) (alteration added; citations omitted).  Nor should a court "substitute [its] own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury." *Torres v. Rock & River Food Inc.*, 232 F. Supp. 3d 1283, 1285 (S.D. Fla. 2017) (alteration added; citation and quotation marks omitted).  Ultimately, "motions for a new trial are committed to the discretion of the trial court[.]" *Montgomery v. Noga*, 168 F.3d 1282, 1295 (11th Cir. 1999) (alteration added; citation omitted).

1.  Verdict Against the Great Weight of the Evidence

Defendant contends the contract verdict's $1 million lost-profits award goes against the great weight of the evidence, repeating its Rule 50(b) arguments that no evidence tied those profits to Defendant's breach and that Muth's calculations were speculative because the grounding occurred 16 months after the breach and relied on affiliate invoices.  (*See* Rule 59 Mot. 11–12;

Rule 59 Reply ¶¶ 8–10).   The Court has explained why this testimony, and the supporting documents, are legally sufficient.  That the jury credited Muth's account, including her explanation that Defendant's breach led Plaintiff to contract with ATI to mitigate damages and that FAA extensions postponed but did not avert the grounding, does not make the verdict a "miscarriage of justice."  *Austin v. FL HUD Rosewood LLC*, 791 F. App'x 819, 826 (11th Cir. 2019) (citation and quotation marks omitted).

### 2.   Alleged Inconsistency in the Verdicts

Defendant next claims that the jury's $258,064.35 compensatory award on Count I (breach of contract) cannot be reconciled with its $75,000 compensatory award on Count II (fraudulent misrepresentation).  (*See* Rule 59 Mot. 12–13); *see also Denton v. R.J. Reynolds Tobacco Co.*, 985 F. Supp. 2d 1331, 1338 (M.D. Fla. 2013) ("An inconsistent verdict may be grounds for new trial." (citations omitted)).  This argument fails at the threshold, for Defendant never objected to any inconsistency before the jury was discharged, thereby waiving the issue.  *See XTec, Inc. v. Hembree Consulting Servs., Inc.*, 183 F. Supp. 3d 1245, 1268 (S.D. Fla. 2016) ("In the Eleventh Circuit, a party seeking to challenge a jury's verdict as inconsistent must object to the issue before the jury is discharged, or else the issue is waived." (citation omitted)).[3]

### 3.   Alleged Disregard of the Court's Instructions

Defendant also maintains that the jury improperly duplicated its compensatory damages award on the fraud claim, contrary to Florida law and the Court's instructions.  (*See* Rule 59 Mot. 13–14 (citing Jury Instructions [ECF No. 123] 5)).  Yet Defendant offers no explanation for how it reaches that conclusion.  (*See id.*; *see also generally* Rule 59 Reply).  The two claims rested on

---

[3] Even if the argument were preserved, it would fail.  Defendant does not explain why the two awards could not rationally differ; certainly, the differing elements and damages instructions for the two claims supply an obvious basis.  In any event, Plaintiff elected to recover on Count I, and not on Count II, rendering any inconsistency immaterial.  (*See* Final J. [ECF No. 130] 1; Rule 59 Resp. ¶ 14).

different elements of proof, and nothing in the record suggests that the fraud award simply replicated the contract damages — a contention the Court finds unsupported.[4]

    4. <u>Failure to Mitigate</u>

    Defendant also reprises its mitigation defense, asserting that Plaintiff knew of overhaul delays but declined to send its spare landing gear to Defendant's repair station. (*See* Rule 59 Mot. 14–16). The jury was entitled to reject this theory. Plaintiff presented evidence that it acted promptly after Defendant cancelled the contract, contracting with ATI and obtaining FAA extensions to keep aircraft flying. (*See* Rule 50(b) Resp. ¶¶ 20, 23–24); *see also NAI-Mobile, LLC v. New Am. Network, Inc.*, No. 21-cv-00032, 2022 WL 3051228, at *10 (S.D. Ala. Aug. 2, 2022) (explaining that "[w]hether a party puts forth sufficient effort to mitigate damages is a question of fact and typically resolved during trial" (alteration added; citation and quotation marks omitted)).

    Moreover, Defendant's position would impose a duty on Plaintiff to entrust critical equipment to the same supplier it no longer trusted — a proposition the jury was free to reject. *Cf. Caradigm USA LLC v. PruittHealth, Inc.*, No. 15-cv-2504, 2018 WL 11350591, at *2 (N.D. Ga. July 23, 2018) (rejecting the notion that a party has a duty to mitigate damages by re-entering into a contract with the repudiating party after an extended delay and near trial (citation omitted)).

    **C. <u>Remittitur</u>**

    Defendant alternatively urges the Court to reduce the total damages award to $75,000, the amount of the deposit Plaintiff paid for the landing gear. (*See* Rule 59 Mot. 16). According to Defendant, this is the most the evidence can support; asserting the jury's compensatory and lost-profits awards were excessive, lacked a clear causal link to the breach, and were tainted by what Defendant characterizes as erroneous evidentiary rulings on damages-related proof. (*See id.*).

---

[4] Again, and as noted, Plaintiff's unsurprising election to recover solely on Count I moots any potential duplication concern. (*See* Final J. 1; Rule 59 Resp. ¶ 14).

Remittitur is appropriate only when a damages award exceeds the outer limit of the amount established by the evidence. *See Moses v. K-Mart Corp.*, 905 F. Supp. 1054, 1057 (S.D. Fla. 1995) (citations omitted), *aff'd sub nom. Moses v. K-Mart Corp., Inc.*, 119 F.3d 10 (11th Cir. 1997). Neither the contract verdict nor the fraud verdict comes close to that mark.

Plaintiff presented fleet performance data, invoices, and Muth's detailed calculations from comparable aircraft to establish the net profits the grounded planes would have earned, with the retained deposit and ATI "cost of cover" corroborating the breach's financial impact. (*See* Rule 50(b) Resp. ¶¶ 20, 23–24). The jury was entitled to credit this model over Defendant's deposit-only theory; and the award's close match to Plaintiff's calculations reflects, rather than undermines, the verdict. Disagreement with the Court's evidentiary rulings is likewise no ground for remittitur.

At bottom, both verdicts were reasonable and well within the permissible range of damages. This is not the "exceptional case" warranting the extraordinary step of a new trial or remittitur. *United States v. Brooks*, 647 F. App'x 988, 993 (11th Cir. 2016); *see also Bozeman v. Pollock*, No. 14-60493-Civ, 2015 WL 5016510, at *10–*11 (S.D. Fla. Aug. 25, 2015).

## IV. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant, Triad Aero Sales, Corp.'s Renewed Motion for Judgment as a Matter of Law **[ECF No. 140]**, and its Motion for New Trial and, in the Alternative, Motion for Remittitur **[ECF No. 142]** are **DENIED**.

CASE NO. 23-24259-CIV-ALTONAGA/Reid

**DONE AND ORDERED** in Miami, Florida, this 14th day of August, 2025.

_____

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

12